IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **HAMBRIC SPORTS MANAGEMENT, LLC,** § § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. **3:09-CV-1662-L** |
| § | |
| **TEAM AK, INC., IMG WORLDWIDE, INC., GAYLORD SPORTS MANAGEMENT, LLC,** and **STERLING C. BALL,** § § § § § § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Before the court are: (1) Defendant Team AK, Inc.'s Motion to Dismiss Plaintiff's Original Complaint, filed September 14, 2009; (2) Defendant Gaylord Sports Management, LLC's Motion to Dismiss, filed September 28, 2009; and (3) Defendant Sterling C. Ball's Motion to Dismiss for Lack of Personal Jurisdiction, filed September 28, 2009. After careful consideration of the motions, briefs, responses, replies, appendices, record, and applicable law, the court **denies without prejudice** Defendant Team AK, Inc.'s Motion to Dismiss Plaintiff's Original Complaint; **denies without prejudice** Defendant Gaylord Sports Management, LLC's Motion to Dismiss; and **denies** Defendant Sterling C. Ball's Motion to Dismiss for Lack of Personal Jurisdiction.

## I.   Factual and Procedural Background

Plaintiff Hambric Sports Management, LLC ("Plaintiff" or "Hambric") originally brought this action in the 298th Civil District Court of Dallas County, Texas, on August 21, 2009, asserting claims of tortious interference with existing contract and tortious interference with prospective

**Memorandum Opinion and Order – Page 1**

relations. Defendants Gaylord Sports Management, LLC ("Gaylord"), Sterling C. Ball ("Ball"), IMG Worldwide, Inc. ("IMG"), and Team AK, Inc. ("Team AK") (collectively, "Defendants") removed the action on September 4, 2009, on the grounds that diversity of citizenship existed among the parties and that the amount in controversy exceeded $75,000. Although Team AK and Plaintiff are technically citizens of the same state, the court determined in its May 14, 2010 memorandum opinion and order that Team AK was improperly joined to this action. Accordingly, the court possesses subject matter jurisdiction over this case.

Hambric entered into a Management and Representation Agreement (the "Agreement") in 2006 with Anthony Kim ("Kim"), a professional golfer. The Agreement provided that Hambric would represent Kim as his agent from August 24, 2006, to December 31, 2008, and that Hambric would be entitled to receive commissions for merchandising, endorsing, promoting, and marketing deals that Kim approved prior to December 31, 2008.

Over the next several months following the Agreement, Plaintiff went to work on marketing Kim; Hambric was able to secure lucrative endorsements with sponsors such as NIKE. On May 6, 2008, however, Kim sent correspondence to Hambric notifying it that he was immediately terminating the Agreement. On June 10, 2008, Kim signed a new agency agreement with IMG. Because the Agreement provided that Hambric had the exclusive right to represent Kim through December 31, 2008, Plaintiff contends that Kim wrongfully violated the Agreement.

Hambric alleges that IMG, Gaylord, and Ball began tortiously interfering with the Agreement prior to Kim's May 6, 2008 termination. Ball allegedly became close with Kim in 2007, during the PGA Tour golf season, in an effort to gain some of Kim's $9,000,000 in earnings. From mid-2007 through May 6, 2008, Plaintiff asserts that Ball attempted to control all aspects of Kim's

relationship with Hambric and was principally involved in the creation of Team AK on June 17, 2008; Ball allegedly started serving thereafter as Team AK's acting president.

Hambric further alleges that Ball delivered copies of the Agreement and Kim's endorsement contract with NIKE to Gaylord for review. Ball and Gaylord allegedly discussed at length with each other the prospect of Gaylord representing Kim over the course of at least thirty phone conversations. Gaylord then allegedly conversed with many endorsement companies concerning a prospective business relationship once it had secured representation of Kim; Hambric asserts that such actions hindered its ability to market and secure additional endorsement deals for Kim. Ultimately, following Kim's May 6, 2008 termination of the Agreement, Kim entered into a new agency agreement with IMG.

Hambric alleges that Defendants were actively engaged in tortious interference throughout 2008 and that such activity damaged endorsement deals that Plaintiff had worked diligently to create on Kim's behalf. This allegedly diminished the amount of compensation owed to Hambric under the terms of the Agreement, compensation that Hambric seeks to recover through this lawsuit. Ball, Gaylord, and Team AK have filed motions to dismiss this action. Ball moves pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss for lack of personal jurisdiction; Gaylord and Team AK move pursuant to Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted.

## II.     Rule 12(b)(2) - Standard for Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant. *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192

(5th Cir. 1985). When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required. *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart*, 772 F.2d at 1192. Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993). Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2) whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475. The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted). The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro*

**Memorandum Opinion and Order – Page 5**

*Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

### III.    Rule 12(b)(2) Analysis

The court first considers Defendant Sterling C. Ball's Motion to Dismiss for Lack of Personal Jurisdiction. Ball maintains that the court lacks personal jurisdiction over him because he has no meaningful ties to Texas.

#### A.    General Jurisdiction

The exercise of general jurisdiction requires continuous and systematic general business contacts between the defendant and the forum state. *Helicopteros*, 466 U.S. at 416. The court must examine the totality of the defendant's contacts with the forum over a reasonable number of years to determine whether the defendant has established a business presence in the forum. *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000). Furthermore, "[t]he minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992).

Ball argues that his contacts with Texas are minimal and do not meet the requirements for general jurisdiction. He asserts that he is domiciled in California, has never been a resident of Texas, and has never been employed in Texas or done business in Texas in his individual capacity.

*See* Ball's App. 3. Although Plaintiff alleges that Ball engaged in tortious conduct in Texas on multiple occasions, it has not shown that Ball's business activities within Texas were continuous and systematic. The court rejects Plaintiff's argument that Ball is subject to general jurisdiction in Texas because of his managerial duties over the companies Magnet, LLC and Ernie Ball, Inc., both of which do business in Texas. Both of those companies are unrelated to this lawsuit and are separate entities from Ball. Likewise, the court is unpersuaded that general jurisdiction is conferred on Ball simply because of his managerial duties over Team AK. Although a named party to this lawsuit, Team AK is nonetheless a separate entity from Ball, and the record is clear that Team AK was not formed until June 17, 2008, after the Agreement's termination. Accordingly, any business contacts derived from Ball's association with Team AK could not have been "continuous and systematic" at the relevant dates at issue regarding Plaintiff's claims against Ball.

The main thrust of Plaintiff's arguments characterizes Ball's contacts with Texas as being directly related to the claims brought in this lawsuit. It therefore appears that Plaintiff's major focus is on specific jurisdiction, rather than general jurisdiction. After considering Defendant's limited general contacts with Texas, as well as Plaintiff's emphasis on specific jurisdiction, the court determines that Plaintiff has not presented a *prima facie* case of general jurisdiction.

### B.    Specific Jurisdiction

Hambric argues that specific jurisdiction exists because the causes of action it asserts arise out of tortious conduct committed by Ball while he was in Texas attending professional golf events and paying social visits to Kim through October 2007 to May 2008. Plaintiff further argues that Ball was aware that his conduct would have a negative impact on the Agreement, an instrument that Ball purportedly knew was governed and controlled by Texas law and which concerned two Texas

entities: Hambric and Kim. Ball contends that Hambric cannot make a *prima facie* showing of specific jurisdiction because it cannot produce evidence demonstrating that Ball discussed the Agreement with Kim on his visits to Texas and because any such allegations are conclusory.

Hambric has included a lengthy supporting appendix for the purpose of demonstrating that specific jurisdiction exists over Ball. Despite Ball's assertion that Hambric has no evidence showing that he spoke with Kim about the Agreement during his visits to Texas, Plaintiff's evidence—including the affidavit of player manager Blake Smith, the deposition testimony of Kim's girlfriend, Lisa Pruett, the deposition testimony of Kim's best friend, Paull Revoulis, and correspondence between Ball and Kim's attorney, Dave Aggers ("Aggers")—indicates otherwise. These statements establish that Ball was in direct contact with Kim during his professional golf and social visits to Texas, that Kim and Ball had discussed the Agreement, and that together they planned to move forward to acquire a new agency agreement with Gaylord and IMG.

Although Ball argues that this evidence does not demonstrate that discussions about the Agreement occurred *in Texas*, the court determines that the circumstantial nature of the evidence, viewed in its entirety, is overwhelming. Plaintiff's evidence establishes that Ball was present at the Valero Texas Open in early October 2007 and acted as Kim's "trainer." *See* Pl.'s App. 41 ¶ 4. He obtained copies of the Agreement and endorsement contracts that Hambric had negotiated on Kim's behalf. On January 17, 2008, Ball had attorney George Reyes review the Agreement and provide a legal memorandum advising how, if possible, the Agreement could be terminated prematurely. *See id.* at 16. Ball states in his declaration that he paid a one-day social visit to Kim in February 2008. Ball's App. 4 ¶ 16. By February 4, 2008, Ball had convinced Kim to cease communications with Hambric. *See* Pl.'s App. 25. Also during February 2008, communication between Ball and

Aggers transpired; the two discussed possibilities to terminate the Agreement. *See id.* at 20. Aggers also provided Ball with a legal memorandum on February 17, 2008, which analyzed the Texas law claim of tortious interference with prospective relations, in anticipation of any counteraction by Hambric. *See id.* at 17. The court determines that the temporal proximity of these communications in relation to the timing of Ball's visit to Texas (and meeting with Kim) plainly rebut his assertion that his trip was merely of a social nature.

Ball took another visit to Texas on March 29, 2008, through April 4, 2008, to attend the Houston Shell Open, and he again met with Kim. Immediately following the tournament, Ball flew Kim and his girlfriend on his private plane back to Palm Springs, California. *Id.* at 50. Kim terminated the Agreement one month later. *Id.* at 13. Plaintiff's evidence further establishes that soon after the termination, Ball returned to Texas on May 22, 2008, to meet with IMG and Gaylord and negotiate a new representation agreement on Kim's behalf. *Id.* at 79. Although Ball argues that his interactions with Kim can be explained as common interaction between admitted friends, the court determines that Plaintiff's circumstantial evidence is sufficient to demonstrate specific jurisdiction over Ball in this lawsuit. It is clear from the pleadings and evidence that Hambric's allegations against Ball encompass ongoing conduct from October 2007 through May 2008. Ball was present in Texas on multiple occasions during this time where he purportedly acted in furtherance of his alleged tortious conduct. The temporal proximity and quick succession of the relevant events giving rise to this lawsuit in relation to the timing of Ball's visits to Texas allow more than a reasonable inference that Kim's and Ball's interactions were more than just social. The court determines that there is sufficient evidence to demonstrate that Kim and Ball, at least

**Memorandum Opinion and Order – Page 9**

minimally, discussed termination of the Agreement and acquisition of a new agent while Ball was in Texas.

Moreover, that Ball anticipated a potential Texas law claim brought by Hambric as a result of his actions is telling. The Agreement, of which Ball had a copy, makes clear that it is construed in accordance with Texas law and that its parties submit to the jurisdiction of the state of Texas. *Id.* at 11 ¶ 8.1. Even if Ball never discussed the Agreement with Kim while in Texas, it is clear that Ball wanted to terminate the Agreement and that he knew he was dealing with a Texas instrument executed between two Texas parties. Ball cites two cases standing for the proposition that a defendant who merely foresees a lawsuit or foresees injury in the forum state does not demonstrate that the defendant could "reasonably anticipate" being haled into court in the forum state. *See* Ball's Reply 5 (discussing *General Retail Servs. v. Wireless Toyz Franchise, LLC*, F. App'x 775, 794 (5th Cir. 2007), and *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999)). Ball maintains that such reasoning should apply to this case. The court finds these cases distinguishable.

In *General Retail*, the Fifth Circuit held that the defendants could not reasonably anticipate being haled into court in Texas because their communication with the forum state, Texas, was not "purposefully directed into the state." *General Retail*, 255 F. App'x at 794 (citing *Wilson v. Belin*, 20 F.3d 644, 648-49 (5th Cir. 1994)). The evidence in that case in no way demonstrated that the defendants had ever traveled to Texas or directed any communications to Texas. *Id.* at 793-94. Here, however, the record is clear that Ball visited Texas on multiple occasions and directed communication there. His visits were quickly followed by significant events affecting the Agreement and ultimately gave rise to Hambric's claims.

**Memorandum Opinion and Order – Page 10**

In *Wien Air Alaska*, the Fifth Circuit held that "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum state." *Wien Air Alaska*, 195 F.3d at 212 (citations omitted). That case involved a defamatory article written in Florida that the author knew would negatively affect the plaintiff's reputation in California. *See id.* 211-12. The author's actions were not specifically directed to California; all events giving rise to the lawsuit occurred in Florida. Here, however, the record is clear that Ball met with Gaylord and IMG in Texas to acquire a new representation agreement for Kim. Ball also met with Kim in Texas on multiple occasions and even paid for a legal analysis of a *Texas* law claim that he anticipated Hambric would bring in response.

Ball's specific contacts with Texas in this case are much more significant than the contacts in the cases he cites. Ball directed at least some of his actions toward the forum state over the course of the time period of events giving rise to this lawsuit. Not only could Ball foresee a lawsuit and injury in Texas, he could also reasonably anticipate being haled into a court within the state of Texas; otherwise, the legal memorandum he sought, which analyzed an anticipated Texas law claim from Hambric, would have been wholly unnecessary and nothing more than an afterthought. Accordingly, the court determines that specific jurisdiction exists over Ball, and his motion to dismiss for lack of personal jurisdiction is **denied**.

### IV.     Rule 12(b)(6) - Standard for Motion to Dismiss for Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir.

2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted).  While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted).  The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F. 3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F. 3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

## V. Rule 12(b)(6) Analysis

The court now considers Defendant Team AK, Inc.'s Motion to Dismiss Plaintiff's Original Complaint and Defendant Gaylord Sports Management, LLC's Motion to Dismiss. The court will consider each motion separately.

### A. Gaylord's Motion to Dismiss

Gaylord maintains that Plaintiff's claims should be dismissed because Hambric has not alleged the necessary elements to bring such claims. The court will consider both claims in turn.

#### 1. Tortious Interference With Existing Contract

To bring a tortious interference with existing contract claim under Texas law, a plaintiff must show: "(1) that a contract subject to interference exists; (2) that the alleged act of interference was willful and intentional; (3) that the willful and intentional act proximately caused damage; and (4) that actual damage or loss occurred." *Amigo Broadcasting, LP v. Spanish Broadcasting Sys., Inc.*,

521 F.3d 472, 489 (5th Cir. 2008) (quoting *ACS Investors, Inc. v. McLauglin*, 943 S.W.2d 426, 430 (Tex. 1997)) (internal quotations omitted). Here, Gaylord focuses on the second and third elements and argues that Hambric has not shown through its allegations that Gaylord committed willful and intentional interference or that Gaylord's purported interference proximately caused Plaintiff's injury.

With respect to willful and intentional interference, Gaylord contends that Plaintiff has only alleged that Gaylord: (1) reviewed the Agreement and Kim's endorsement contract with NIKE, (2) communicated with Ball about the prospect of becoming Kim's agent, and (3) researched Kim's marketability with potential endorsement companies. None of these actions, Gaylord argues, constitutes willful and intentional interference. Hambric responds that it made specific allegations in its pleadings that established such interference; Hambric alleges that, prior to Kim's May 6, 2008 termination of the Agreement, Gaylord was in frequent contact with Ball to discuss the prospect of representing Kim.

To properly demonstrate willful and intentional interference, it must be pleaded that "the interfering party [had] actual knowledge of the contract or business relation in question, or knowledge of the facts and circumstances that would lead a reasonable person to believe in the existence of the contract or business relationship." *Id.* at 490 (internal quotations and citation omitted). Alleging an "intent to injure" is unnecessary, so long as the allegations indicate that the actor desired to cause the consequences of its act. *Id.* (internal quotations and citation omitted). The pleadings state that Gaylord possessed copies of the Agreement and Kim's endorsement contract with NIKE prior to Kim's termination of the Agreement. Gaylord allegedly reviewed these documents and, by its own admission, entertained the prospect of entering into an agency agreement

**Memorandum Opinion and Order – Page 14**

with Kim. Plaintiff states that Gaylord even went so far as to research Kim's marketability with potential endorsement companies while the Agreement was in effect. The pleadings therefore provide a reasonable basis from which to draw the inference that Gaylord knew, or at least was aware of, Kim's exclusive contractual relationship with Hambric. Despite such knowledge, Plaintiff alleges that Gaylord continued to engage in talks with Ball and "felt out" the market for new potential endorsement contracts. The court determines that this alleged conduct constitutes intentional and willful acts of interference.

With respect to proximate causation, Gaylord contends that Plaintiff has failed to allege any harm resulting from Gaylord's conduct. Gaylord further asserts that there is no causal relationship between Gaylord's purported interference and Hambric's resulting damages because Kim ultimately entered into a new agreement with IMG, not Gaylord. Gaylord therefore maintains that any injury that Hambric suffered could not have been caused by Gaylord. Hambric responds that Gaylord played an active role in persuading Kim to terminate the Agreement because Gaylord participated in over thirty phone calls with Ball to discuss Gaylord replacing Hambric as Kim's agent, prior to the Agreement's termination.

To properly show proximate cause, a plaintiff must allege that "the defendant took an active part in persuading a party to a contract to breach it." *Id.* at 493 (internal quotations and citation omitted). "Merely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach." *Id.* (quoting *Davis v. HydPro, Inc.*, 839 S.W.2d 137, 139 (Tex. App.—Eastland 1992, writ denied) (internal quotations omitted). "It is necessary that there be some act of interference or of persuading a party to breach, for example by offering better terms or other incentives, for tort liability to arise." *Davis*, 839

S.W.2d at 139 (citations omitted). Here, it is undisputed that Gaylord and Kim never entered into a contractual agreement and that Gaylord never negotiated any endorsement deals on Kim's behalf. While the pleadings make abundantly clear that Gaylord entertained the possibility of representing Kim, even alleging that Gaylord went so far as to conduct marketing research to measure the expected lucrativeness of such a union, there is no indication in the pleadings that Gaylord actively persuaded Kim to terminate the Agreement.

Hambric's pleadings paint Ball as the driving force and catalyst behind Kim's moves to terminate the Agreement and acquire a new agent. There is nothing that suggests Gaylord ever made an offer to Kim of "better terms or other incentives" prior to the Agreement's termination. That the pleadings state that Kim ultimately signed with IMG instead of Gaylord is also telling. It is difficult for the court to conclude that Kim was coaxed into terminating the Agreement due to Gaylord's talks with Ball when it was IMG, not Gaylord, that entered into a new agency agreement with Kim. Moreover, there is no indication that Gaylord was ever in direct contact with Kim. The pleadings repeatedly limit Gaylord's contact with Kim to its interactions with Ball. It was Ball who sought out Gaylord and allegedly acted as Kim's representative; it was not the other way around. The court therefore determines that Hambric has not established proximate cause, a critical and required element for bringing its claim for tortious interference with existing contract. Accordingly, Hambric's claim should be dismissed for failure to state a claim upon which relief can be granted.

### 2. Tortious Interference With Prospective Relations

To state a claim for tortious interference with prospective relations under Texas law, "a claimant must show, *inter alia*, that: (1) the defendant's conduct was independently tortious or wrongful; and (2) [the claimant] suffered actual harm or damage as a result of the defendant's

interference." *Slaughter-Cooper v. Kelsey Seybold Med. Group*, 379 F.3d 285, 292 (5th Cir. 2004) (internal quotations and citations omitted).[1]

In its response to Gaylord's motion to dismiss, Hambric does not rebut, or even address, the arguments raised by Gaylord concerning the tortious interference with prospective relations claim. Moreover, Hambric has not demonstrated through its pleadings that Gaylord has engaged in conduct that is independently tortious or wrongful. "Independently tortious" means that the conduct would violate some other recognized tort duty. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 712 (Tex. 2001). In other words, the defendant's conduct must be "actionable under a recognized tort." *Id.* at 726. "Conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations . . . ." *Id.*

Not only has Plaintiff fallen short of alleging how Gaylord's conduct qualifies as "independently tortious," it has failed to respond to Gaylord's argument for dismissal. The court determines that Hambric has abandoned its tortious interference with prospective relations claim against Gaylord. Plaintiff has therefore failed to state a claim upon which relief can be granted.

### B.     Team AK's Motion to Dismiss

The court entered a memorandum opinion and order on May 14, 2010, which denied a motion to remand filed by Plaintiff. In its order, the court analyzed whether Team AK was

---

[1] Texas appellate courts have synthesized two decisions by the Texas Supreme Court, crystalizing four required elements to establish a claim for tortious interference with prospective relations. These elements are: "(1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an 'independently tortious or unlawful' act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference." *Allied Capital Corp. v. Cravens*, 67 S.W.3d 486, 491 (Tex. App.—Corpus Christi 2002, no pet.) (citing generally *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001), and *Bradford v. Vento*, 48 S.W.3d 749 (Tex. 2001)).

**Memorandum Opinion and Order – Page 17**

improperly joined as a party to this action. Ultimately, the court determined that Team AK was improperly joined because "there is no reasonable basis for the district court to predict that [Plaintiff] might be able to recover against [Team AK]." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 992 (2005) (citing *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003)). The court engaged in a Rule 12(b)(6)-type analysis and concluded that Hambric had not set forth allegations that Team AK had engaged in "independently tortious" conduct.[2] Because Hambric failed to present a *prima facie* case for bringing a tortious interference with prospective relations claim, the court determined that there was no reasonable basis of recovery.

Because Plaintiff has failed to establish a *prima facie* case of its claim against Team AK, the court not only determines that Team AK is improperly joined to this action because no reasonable basis of recovery exists, but now also determines that Plaintiff has failed to state a claim upon which relief can be granted. Dismissal of Plaintiff's claim is therefore warranted.

### C. Amendment

In each of Hambric's responses to the motions to dismiss, Hambric alternatively requests an opportunity to amend its complaint to cure any deficiencies identified by the court. The court agrees that Plaintiff should be given an opportunity to amend its complaint to correct any pleading deficiencies with respect to its claims against Gaylord and Team AK. This lawsuit was originally filed in state court and was originally subject to less stringent pleading standards. Plaintiff has not

---

[2] Although the "independently tortious" element is only required for a claim of tortious interference with prospective relations (and not for tortious interference with existing contract), this was the only claim that Hambric brought against Team AK in its complaint.

**Memorandum Opinion and Order – Page 18**

yet had an opportunity to address the deficiencies identified by the court so as to comport with the heightened federal pleading standard required by *Twombly* and *Iqbal*.

The court determined in its May 14, 2010 memorandum opinion and order that it has subject matter jurisdiction in this case because of improper joinder with respect to Team AK. Although the court found that Plaintiff's claims against Team AK provided no reasonable possibility of recovery, that determination was made on the pleadings as they existed at the time of removal. The court's finding did not preclude the possibility of Plaintiff subsequently stating a viable cause of action against Team AK through amendment.

If Hambric is able to amend its pleadings in such a way as to properly bring a claim against Team AK, the court's subject matter jurisdiction would not be destroyed. The court finds such an instance distinguishable from a situation where a nondiverse entity is added as a party to a lawsuit after removal, as contemplated under 28 U.S.C. § 1447(e). In that situation, the newly added nondiverse party would destroy diversity of citizenship and the court's subject matter jurisdiction. Here, however, the court has already made its determination that subject matter jurisdiction is proper because of improper joinder, based on the pleadings at the time of removal. Although Plaintiff may amend its claims against Team AK, Plaintiff is not adding a new, nondiverse party. The court knows of no authority that would preclude amendment of pleadings under these circumstances, especially when the initial pleadings were based on the less stringent rules and pleading requirements of state court. Amendment should be granted unless to do so would be futile or cause undue delay or undue prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The court is not convinced that amendment would necessarily be futile here and does not believe that allowing such amendment would result in undue delay or undue prejudice.

Accordingly, the court will afford Hambric an opportunity to amend its pleadings and cure the deficiencies identified herein. Plaintiff will have until **July 9, 2010** to file the amended pleading. If, after amendment, Hambric has still alleged insufficient facts to support its claims, Gaylord and Team AK may renew their motions to dismiss at that time.

## VI. Conclusion

For the reasons stated herein, the court determines that Plaintiff has not stated a claim upon which relief can be granted against Team AK or Gaylord, but it will allow Plaintiff an opportunity to amend its pleadings and cure the deficiencies. The court also determines that personal jurisdiction exists over Ball. Accordingly, the court **denies without prejudice** Defendant Team AK, Inc.'s Motion to Dismiss Plaintiff's Original Complaint, and **denies without prejudice** Defendant Gaylord Sports Management, LLC's Motion to Dismiss. Plaintiff must file its amended pleading and cure any and all deficiencies as herein identified by the court no later than **July 9, 2010, 5:00 p.m.** Failure of Plaintiff to file its amended pleading as directed will result in dismissal for failure to comply with a court order. *See* Fed. R. Civ. P. 41(b). Further, the court **denies** Defendant Sterling C. Ball's Motion to Dismiss for Lack of Personal Jurisdiction.

**It is so ordered** this 29th day of June, 2010.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge